# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

Case No.

_____

### BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION, D/B/A CONCORDIA PREPARATORY SCHOOL,

Petitioner,

v.

### DONNA BUETTNER-HARTSOE, AND N.H., A MINOR, BY AND THROUGH HER PARENT AND NEXT FRIEND, DONNA BUETTNER-HARTSOE,

Respondents.

_____

*On Petition from the United States District Court for the District of Maryland, Case No. 1:20-cv-03132 (Bennett, R.)*

_____

## PETITION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 1292(B)

_____

Gregg E. Viola
Mark P. Johnson
Eccleston and Wolf, P.C.
7240 Parkway Drive, 4th Floor
Hanover, MD  21076
410-752-7474
viola@ewmd.com
johnson@ewmd.com
*Attorneys for Petitioner*

**CORPORATE DISCLOSURE STATEMENT**

Baltimore Lutheran High School Association d/b/a Concordia Preparatory School, by and through undersigned counsel, and pursuant to Local Rule 26.1, states that there is no parent corporation of Baltimore Lutheran High School Association, Inc. ("BLSHA"), and no publicly held corporation owns 10% or more of the stock of BLSHA.

Baltimore Lutheran School Holdings, L.L.C. ("BLSH") is a Maryland limited liability company of which BLSHA is the sole member. BLSH was organized to manage and lease BLHSA's athletic facilities pursuant to a non-exclusive master lease.

BLSHA is insured by Philadelphia Indemnity Insurance Company, which may have a financial interest in the outcome of the litigation.

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF FACTS AND OF THE CASE ............................................... 1

QUESTION CERTIFIED ..................................................................................... 2

ARGUMENT SUMMARY .................................................................................... 2

ARGUMENT .......................................................................................................... 4

    I.      THE DISTRICT COURT ERRED IN CONCLUDING THAT TAX EXEMPTION UNDER 26 U.S.C. § 501(C)(3) CONTITUTES RECEIPT OF FEDERAL FINANCIAL ASSISTANCE UNDER TITLE IX ....................................................................................... 4

    II.     THE PETITION SHOULD BE GRANTED BECAUSE § 501(B)'S SALUTARY PURPOSE IS SATISFIED ........................................... 8

          A.     The District Court's Order involves a controlling question of law of critical importance to private independent schools and non-profit entities who need guidance on their legal obligations under Title IX...……………………………………9

          B.     The Certified Question involves an issue of first impression in the Circuit and there is a substantial ground for difference of opinion across district courts...………………………………..13

          C.     An immediate appeal of the District Court's Order would materially advance the ultimate termination of this litigation (and the four other cases against Petitioner)..………………………14

CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahrenholz v. Board of Trustees*, 219 F.3d 674 (7th Cir. 2000) .......................................... 13

*Associated Mills, Inc. v. Drake Hotel, Inc*., 334 N.E.2d 746 (Ill. App. 1975) .................. 23

*Bachman v. Am. Soc. of Clinical Pathologists*, 577 F. Supp. 1257 (D.N.J. 1983) ........... 11

*Barnes v. Gorman*, 536 U.S. 181 (2002) ........................................................................ 6, 7

*Bergeron v. Atl. Pac. Marine*, 899 F. Supp. 1544, 1550 (W.D. La. 1993) ....................... 16

*Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) ........ 4, 9

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022) .......................... 6, 7

*Davis v. Monroe Cty. Bd. of Educ*., 526 U.S. 629 (1999) ............................................... 6, 7

*E.H. v. Valley Christian Acad.*, No. 221CV07574MEMFGJSX, 2022 WL 2953681 (C.D. Cal. July 25, 2022) ............................................................................................. 21, 25

*Fannin v. CSX Transp. Inc.*, 1989 U.S. App. LEXIS 20859 (4th Cir. April 26, 1989) .... 13

*Forest Grove Sch. Dist. v. T. A.*, 557 U.S. 230 (2009) ........................................................ 7

*Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185 (S.D.N.Y. 1988), *aff'd*, 882 F.2d 621 (2d Cir. 1989) ................................................................................ 21

*Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998) .............................. 6

*Graham v. Tennessee Secondary Sch. Athletic Ass'n*, No. 1:95-CV-044, 1995 WL 115890 (E.D. Tenn. Feb. 20, 1995) ................................................................................... 11

*In re Cement Antitrust Litig*., 673 F.2d 1020 (9th Cir. 1982) .......................................... 15

*In re Facebook, Inc.*, 986 F. Supp. 2d 524 (S.D.N.Y. 2014) ........................................... 17

*In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741 (D. Md. 2003) .................... 17

*In re Trump*, 928 F.3d 360 (4th Cir. 2019) .................................................... 12, 15, 20, 22

*Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n*, 134 F. Supp. 2d 965 (N.D. Ill. 2001); ........................................................................................................................... 10

iii

*Johnson v. Burken*, 930 F.2d 1202 (7th Cir. 1991) ........................................................ 15

*Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir.), *cert. denied*, 419 U.S. 885 (1974) 15

*Keena v. Groupon, Inc.*, 886 F.3d 360 (4th Cir. 2018) ................................................... 13

*Lau v. Nichols*, 414 U.S. 563 (1974) ............................................................................... 6

*M.H.D. v. Westminster Sch.*, 172 F.3d 797 (11th Cir. 1999) ........................................... 22

*Mamani v. Berzain*, 825 F.3d 1304 (11th Cir. 2016) ...................................................... 14

*Martin v. Delaware L. Sch. of Widener Univ.*, 625 F. Supp. 1288 (D. Del. 1985), *aff'd*, 884 F.2d 1384 (3d Cir. 1989) ........................................................................................... 10

*McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251 (11th Cir. 2004) .......................... 15, 22

*McNeil v. Aguilos*, 820 F. Supp. 77 (S.D.N.Y. 1993)). .................................................... 17

*Merrifield v. Beaven/Inter-Am. Companies, Inc.*, No. 89 C 8436, 1991 WL 171376 (N.D. Ill. Aug. 30, 1991) ...................................................................................................... 10

*Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009) ........................................................ 14

*Mourning v. Family Publ'ns Serv.*, 411 U.S. 356 (1973) ................................................... 9

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ................................... 6, 7

*President and Directors of Georgetown v. Madden*, 660 F.2d 91 (4th Cir. 1981) ..... 12, 13

*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) ............................. 20

*Russo v. Diocese of Greensburg*, No. CIV.A09-1169, 2010 WL 3656579 (W.D. Pa. Sept. 15, 2010) .................................................................................................................... 11

*Scott v. Ruston La. Hosp. Co.*, No. 16-0376, 2017 U.S. Dist. LEXIS 56138 (W.D. La. Apr. 12, 2017) .................................................................................................................... 24

*South Dakota v. Dole*, 483 U.S. 203 (1987) ...................................................................... 7

*Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) .......................... 24

*Stewart v. New York Univ.*, 430 F. Supp. 1305 (S.D.N.Y. 1976) ..................................... 11

*Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268 (1969) ...................... 9

*Tidewater Oil Co. v. United States*, 409 U.S. 151 (1972) ................................................ 12

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330 (4th Cir. 2017) ....................................................................................................... 14

*United States v. UPS Customhouse Brokerage, Inc.*, 30 C.I.T. 1612 (Ct. Int'l Trade 2006) ....................................................................................................... 16

*Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012) ....... 10

**Statutes**

20 U.S.C. § 1682 ............................................................................................... 6

20 U.S.C.S. § 1681 ............................................................................................ 2

**Regulations**

34 C.F.R. § 106.2 .............................................................................................. 7

34 C.F.R. § 106.45 ............................................................................................ 14

# STATEMENT OF FACTS AND OF THE CASE

On October 28, 2020, Respondents Donna Buettner-Hartsoe, individually and on behalf of her daughter N.H., filed a Complaint against Petitioner Baltimore Lutheran High School Association, Inc., doing business as Concordia Preparatory School. Respondents' Complaint arose from allegations of student-on-student bullying and harassment, and the Petitioner's response thereto, while N.H. a student at Petitioner's school during the 2017-2018 school year. Respondents asserted causes of action against Petitioner including for violation of 20 U.S.C. § 1681, *et. seq.*, Title IX of the Education Amendments Act. Petitioner is a small, Lutheran-based, independent school located in Towson, Maryland. It is undisputed that Petitioner has tax-exempt status under 26 U.S.C. § 501(c)(3).[1]

Title IX is what is known as Spending Clause legislation, applicable to schools and educational programs receiving "Federal financial assistance." Title IX provides generally that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

---

[1] Respondents' Complaint is one of five cases against Petitioner pending in the United States District Court for the District of Maryland. The other four cases are *Donna Buettner-Hartsoe, et al. v. Baltimore Lutheran High School Association, Inc., et al.*, Case No. 1:21-cv-00691; *Andrea Conrad, et al. v. Baltimore Lutheran High School Association, Inc., et al.*, Case No. 1:20-cv-03229; *Ariana Gomez v. Baltimore Lutheran High School Association, Inc., et al.*, Case No. 1-20-CV-03267; and *Jennifer Pullen v. Baltimore Lutheran High School Association, Inc., et al.*, Case No. 1:20-cv-03214. The Order and Memorandum Opinion upon which this Petition for Leave to Appeal is based was entered in all five cases.

discrimination under any education program or activity receiving *Federal financial assistance*." 20 U.S.C.S. § 1681 (emphasis added).

After the conclusion of fact discovery, Petitioner filed a Partial Motion to Dismiss or in the alternative for Summary Judgment on the Title IX claim arguing that Petitioner had not received federal financial assistance during the time period in which N.H. was a student at the school such that Respondents could not assert a cause of action for violation of Title IX. The United States District Court for the District of Maryland, Judge Bennett presiding, construed Petitioner's Motion as seeking partial summary judgment, and denied the Motion holding that Petitioner's 26 U.S.C. § 501(c)(3) tax exemption constitutes federal financial assistance for the purposes of Title IX. Copies of the District Court's Memorandum Opinion and Order, dated July 21, 2022, are attached as Exhibits 1 and 2.

Petitioner filed a Motion for Reconsideration, or in the Alternative, Motion to Certify Order for Interlocutory Appeal. After a hearing, on September 6, 2022 the District Court denied the Motion for Reconsideration but granted the Motion to Certify Order for Interlocutory Appeal. Copies of the District Court's Memorandum Opinion and Order, dated September 6, 2022, are attached as Exhibits 3 and 4.

This Petition for Leave to Appeal follows the denial of Petitioner's Motion for Reconsideration, and is being filed timely pursuant to 28 U.S.C. § 1292(B). This Court should grant the Petition because the question certified is an important and

controlling question of law, which has not previously been decided in this Circuit, and over which there are now conflicting opinions in District Courts, and because the question certified is of critical importance to private independent schools, and non-profit entities, across the country that currently have grave uncertainty and anxiety about their legal obligations under Title IX.

## QUESTION CERTIFIED

Does tax exemption under 26 U.S.C. § 501(c)(3) constitute receipt of federal financial assistance for purposes of Title IX of the Education Amendments Act of 1972?

## ARGUMENT SUMMARY

This Court should grant the Petition for Leave to Appeal, and it is in the public's interest to do so because the District Court has created bad law on a discrete legal issue that would have a profound impact on legal obligations of private independent schools and other non-profit organization regarding Title IX and other Spending Clause legislation. The Supreme Court has repeatedly characterized Title IX and other Spending Clause legislation as contractual in nature – in exchange for federal financial assistance, the recipient agrees to comply with federally imposed conditions such as, under Title IX, an agreement not to discriminate on the basis of sex. With that contract analogy, the Supreme Court has held that if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.

Congress, however, did not define what constitutes federal financial assistance, and the issue in this case is whether that term includes tax exemption under exemption under 26 U.S.C. § 501(c)(3). Instead, Congress delegated authority to federal agencies to create regulations governing Title IX, and the Department of Education, as well as twenty-two (22) other Federal agencies, have adopted a comprehensive definition of federal financial assistance that does not include tax exemptions within the definition of federal financial assistance. Moreover, to Petitioner's knowledge, the federal government has never brought an enforcement action against a § 501(c)(3) tax exempt non-profit entity that does not receive federal funding for failing to have a Title IX program. In short, there is no administrative or regulatory guidance supporting the District Court's decision that tax exempt status under § 501(c)(3) is federal financial assistance, and the District Court's decision amounts to legislative public policy violative of the substantial deference afforded to federal agencies under *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843-45 (1984).

Moreover, for many years private independent schools across the country, many of which enjoy tax exempt status under § 501(c)(3), have made a conscious decision not to accept loans, grants, or other federal assistance, and by doing so, have relied on Title IX regulations and a consensus among education lawyers and other professionals that, by foregoing federal funds, they would not be burdened with the

requirements of Title IX and other Spending Clause legislation that mandate complicated and expensive administrative measures. The District Court's decision has created significant tension and uncertainty in the private independent school community regarding whether their tax exempt status constitutes federal financial assistance. Schools need appellate guidance on whether Title IX applies based solely upon tax exempt status so that school administrators can evaluate whether to take time away from educating students and supporting faculty to devise plans to comply with the administratively complex and rigorous mandates of Title IX.

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN CONCLUDING THAT TAX EXEMPTION UNDER 26 U.S.C. § 501(C)(3) CONTITUTES RECEIPT OF FEDERAL FINANCIAL ASSISTANCE UNDER TITLE IX.

The District Court's decision that tax exemption under 26 U.S.C. § 501(c)(3) constitutes receipt of federal financial assistance for purposes of application of Title IX is fundamentally incorrect and inconsistent with the scope and nature of Spending Clause legislation. The Supreme Court has long recognized, for more than 40 years, that legislation enacted by Congress pursuant to the spending power, such as Title IX, "is much in the nature of a contract" between the recipient of that spending and the Federal government. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). *See also Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1570 (2022); *Barnes v. Gorman*, 536 U.S. 181, 186 (2002); *Davis v. Monroe Cty.*

*Bd. of Educ.*, 526 U.S. 629, 658-59 (1999); *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 286 (1998); *Lau v. Nichols*, 414 U.S. 563, 568-69 (1974). As recently stated in *Cummings*, "[u]nlike ordinary legislation, which 'imposes congressional policy' on regulated parties 'involuntarily,' Spending Clause legislation operates based on consent: 'in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'" 142 S. Ct. at 1570 (quoting *Pennhurst*, 451 U.S. at 16).

The Supreme Court has also noted that, like other types of contracts, there can be no knowing acceptance of the contract attendant with Spending Clause legislation if the recipient of federal funds "is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst*, 451 U.S. at 17. *See also Cummings*, 142 S. Ct. at 1570; *Forest Grove Sch. Dist. v. T. A.*, 557 U.S. 230, 246 (2009) (stating that "conditions attached to a State's acceptance of funds must be stated unambiguously"); *Barnes*, 536 U.S. at 186; *Davis*, 526 U.S. at 637; *South Dakota v. Dole*, 483 U.S. 203, 207 (1987).

The Title IX statute, however, does not define what constitutes "Federal financial assistance." Instead, Congress directed agencies that extend federal grants, loans, or other assistance to education programs or activities to promulgate their own rules and regulations consistent with the objectives of Title IX. 20 U.S.C. § 1682.

Based upon that authority, the Department of Education and twenty-two (22) other Federal agencies have enacted similar comprehensive definitions of federal financial assistance; the Department of Education's regulation, 34 C.F.R. § 106.2(g), states:

> (g) Federal financial assistance means any of the following, when authorized or extended under a law administered by the Department:
> (1) A grant or loan of Federal financial assistance, including funds made available for:
>> (i) The acquisition, construction, renovation, restoration, or repair of a building or facility of any portion thereof; and
>> (ii) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
> (2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
> (3) Provision of the services of Federal personnel.
> (4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.
> (5) Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

Conspicuous by its absence from this definition is tax exempt status under § 501(c)(3). To the contrary, the definition of federal financial assistance in the regulations encompass only transfers of federal money, property or services from the government. In situations where a statute is silent or ambiguous with respect to a specific issue, courts must afford substantial deference to a federal agency's

statutory interpretation when that interpretation is not unreasonable. *Chevron U.S.A. Inc.*, 467 U.S. at 843-45, Specifically, an agency's interpretation of a statute is valid if it is "'reasonably related to the purpose of the enabling legislation.'" *Mourning v. Family Publ'ns Serv.*, 411 U.S. 356, 369 (1973) (quoting *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 280-81 (1969). The District Court ignored that substantial deference and imposed its own public policy and interpretation of the definition of federal financial assistance that has not been adopted by any agency of the federal government. To Petitioner's knowledge, the federal government has never brought an enforcement action against a § 501(c)(3) tax exempt non-profit entity that does not receive federal funding for failing to have a Title IX program.

Not only is the District Court's decision contrary to the regulations developed by twenty-three Federal agencies, and violative of the applicable *Chevron* deference, it is also contrary to the decisions rendered by a majority of courts that have considered the issue holding that tax exemptions do not constitute federal financial assistance for Title IX and other Spending Clause legislation. *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n*, 134 F. Supp. 2d 965, 971-72 (N.D. Ill. 2001); *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 332 (E.D.N.Y. 2012); *Merrifield v. Beaven/Inter-Am. Companies, Inc.*, No. 89 C 8436, 1991 WL 171376, at *3 (N.D. Ill. Aug. 30, 1991); *Martin v. Delaware L. Sch. of Widener*

*Univ.*, 625 F. Supp. 1288, 1302 n.13 (D. Del. 1985), *aff'd*, 884 F.2d 1384 (3d Cir. 1989); *Bachman v. Am. Soc. of Clinical Pathologists*, 577 F. Supp. 1257, 1265 (D.N.J. 1983); *Stewart v. New York Univ.*, 430 F. Supp. 1305, 1314 (S.D.N.Y. 1976). Other courts, while not directly ruling on the issue, have expressed skepticism that tax-exempt status qualifies as federal financial assistance. *See, e.g.*, *Russo v. Diocese of Greensburg*, No. CIV.A09-1169, 2010 WL 3656579, at *3 (W.D. Pa. Sept. 15, 2010); *Graham v. Tennessee Secondary Sch. Athletic Ass'n*, No. 1:95-CV-044, 1995 WL 115890, at *17 n.4 (E.D. Tenn. Feb. 20, 1995).

Given the foundation of Spending Clause legislation, and the absence of tax exempt status in the Federal regulations and any administrative guidance, a private independent school such as Petitioner could not have knowingly and voluntarily agreed to be subject to Title IX by the mere fact of its non-profit charitable § 501(c)(3) status. This is borne out by the record, which demonstrates that virtually all private, independent schools were operating under the well-reasoned belief that tax exempt status did not constitute Federal financial assistance. The District Court's decision is incorrect, fatally flawed, and should be reviewed and reversed.

## II. THE PETITION SHOULD BE GRANTED BECAUSE § 1292(B)'S SALUTARY PURPOSE IS SATISFIED

Whether an immediate appeal of an interlocutory order certified under 28 U.S.C. § 1292(b) is granted or denied is at the sole discretion of this Court. *See Tidewater Oil Co. v. United States*, 409 U.S. 151, 167 (1972); *President and*

*Directors of Georgetown v. Madden*, 660 F.2d 91, 97 (4th Cir. 1981). That discretion, however, is limited by the express language of the statute because when the three statutory criteria are met, this Court has a "'duty. . . to allow an immediate appeal to be taken.'" *In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019) (quoting *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000)). Specifically, this Court has stated: "The statute by its terms requires us independently to determine: (1) whether the lower court's order indeed turned on a 'controlling question of law'; (2) whether there is 'substantial ground for difference of opinion' with respect to the applicable legal principles; and (3) whether an immediate appeal would 'materially advance the ultimate termination of the litigation.'" *Fannin v. CSX Transp. Inc.*, 1989 U.S. App. LEXIS 20859, at *4 (4th Cir. April 26, 1989) (citing *Madden*, 660 F.2d at 96-97). *See also Keena v. Groupon, Inc.*, 886 F.3d 360, 363 (4th Cir. 2018) ("With those criteria satisfied, the court of appeals can exercise its jurisdiction and review the question that is certified.").

Moreover, the Supreme Court has stated that the preconditions for § 1292(b) review "are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110-11 (2009). This is one of those cases.

**A.    The District Court's Order involves a controlling question of law of critical importance to private independent schools and non-profit entities who need guidance on their legal obligations under Title IX.**

The first element under § 1292(b) is that the case present a controlling question of law, defined as a "'pure question of law,' i.e., 'an abstract legal issue that the court of appeals can decide quickly and cleanly.'" *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016)).  A pure question of law does not require the appellate court "to delve beyond the surface of the record in order to determine the facts." *Agape Senior Cmty, Inc*., 848 F.3d at 341 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)).

For the question of law to be "controlling," it does not have to resolve the action in its entirety; instead, a controlling question of law includes those that are "'serious to the conduct of the litigation, either practically or legally.'" *In re Trump*, 928 F.3d at 371 (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)). *See also In re Cement Antitrust Litig*., 673 F.2d 1020, 1026 (9th Cir. 1982) ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court."); *Katz v. Carte Blanche Corp*., 496 F.2d 747, 755 (3d Cir.), *cert. denied*, 419 U.S. 885 (1974) (stating that "on the practical level, saving of time of the district

court and of expense to the litigants was deemed by the sponsors to be a highly relevant factor" to whether the question presented is controlling).

In this case, the certified question is a pure question of law on an abstract legal issue that can decided quickly and cleanly without delving into the factual record. The only relevant fact is that CPS is a tax-exempt § 501(c)(3) entity, and that fact is undisputed. Thus, the legal issue of whether that tax exemption constitutes federal financial assistance for purposes of Title IX is a pure question of law or abstract legal issue that can be decided without any consideration of the factual record.

Additionally, the question of law is controlling because the District Court's Order, if erroneous, would be reversible on appeal. If tax-exempt status under § 501(c)(3) does not constitute receipt of federal financial assistance under Title IX, CPS need not comply with Title IX, and Plaintiffs cannot state a cause of action for violation of the statute. Whether a party can pursue a legal claim as a matter of law is a quintessential example of a legal issue that could significantly and materially affect the conduct and outcome of the litigation, *see, e.g.*, *United States v. UPS Customhouse Brokerage, Inc.*, 30 C.I.T. 1612, 1618–1619 (Ct. Int'l Trade 2006) (question of whether certain damages were available under statute); *Bergeron v. Atl. Pac. Marine*, 899 F. Supp. 1544 (W.D. La. 1993) (question of whether a claim for punitive damages or loss of consortium was available to plaintiff or his wife), and this is especially true for alleged claims under Title IX because Title IX involves

unique elements, burden of proof, and available damages. If this Court finds that a CPS has not received federal financial assistance as defined under Title IX, such that Title IX does not apply to the school, it would significantly and materially affect the litigation because it would remove a significant part of Respondents' case against CPS, including damages that are recoverable under Title IX but not under Respondents' other tort theories.

Courts have also defined a controlling question of law as "'one that substantially affects a large number of cases.'" *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 742 (D. Md. 2003) (quoting *McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993)). *See also In re Facebook, Inc.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014) (stating that "[t]he impact an appeal will have on other cases need not be large, but it 'is a factor that [the court] may take into account'"). The resolution of the certified question, whether tax exemption under 26 U.S.C. § 501(c)(3) constitutes receipt of federal financial assistance for purposes of Title IX, is of critical importance to the five cases pending against Petitioner because it will resolve whether the plaintiffs in the five cases can pursue Title IX claims against Petitioner for all incidents that occurred while they were students at CPS.[2]

---

[2] Relevant to one of the five cases against Petitioner, CPS received federal funding in 2020 in the form a PPP loan. Whether Title IX applied to Petitioner before receipt of that loan is a significant issue given the timing of the alleged misconduct giving rise to the Title IX claim.

Moreover, the question of law is controlling because its resolution on appeal will have a significant impact on independent private schools across this jurisdiction who need guidance on their legal obligations under Title IX. Independent private schools have a variety of means and methods in place for addressing incidents such as student-on-student misconduct, but the issue in this case revolves around how those schools must address gender discrimination. The Department of Education's regulations governing and providing guidance on Title IX contain many burdensome requirements including obligations for responding to sexual harassment and other forms of gender-based misconduct, including having a Title IX coordinator, and staff trained on applying legal principles such as privilege, burden of proof, and rules of evidence, who are responsible for implementing complex and legalistic grievance procedures for receiving, investigating, and adjudicating sexual harassment complaints. *See, e.g.,* 34 C.F.R. § 106.45. Title IX regulations contain robust notice requirements and the complainant and person accused must have the right to present witnesses and evidence, after which the investigator must draft a report, the decision-maker must issue a written determination, and an appeal can be noted, during which time the school can take no disciplinary action against the accused unless certain findings are made. *Id.* Compliance with these, and all of Title IX's requirements, would require enormous endeavors by independent private schools, or other non-profit entities with any educational program or activity, if § 501(c)(3) tax exempt

status qualifies as federal financial assistance. Furthermore, Title IX's substantive and procedural requirements change regularly from administration to administration, and under the District Court's rationale, tax exempt non-profit entities would have the same obligations to keep up with changes in Title IX practices as large universities that have entire divisions dedicated to compliance. This is all not to mention the many other laws and regulations that contain restrictions and burdens on entities that receive federal financial assistance, all of which would become applicable to independent private schools if § 501(c)(3) tax exempt status qualifies as federal financial assistance. As a result, CPS and other independent private schools are in desperate need for clarity on this issue presented, and the Petition should be granted for an immediate appeal of the District Court's interlocutory decision. That significant potential impact cannot be overstated, as even Respondents' expert has described the District Court's Order as a decision that "will likely soon be sending shockwaves through private K-12 education, and religiously affiliated schools."[3] If Respondents' own expert described the District Court's decision as "sending shockwaves" through the education community, it cannot seriously be disputed that this is a controlling legal question that should be addressed on appeal sooner rather than later.

---

[3] Available at https://www.jdsupra.com/legalnews/are-private-k-12-schools-subject-to-8012462 (last visited September 6, 2022).

**B.** **The Certified Question involves an issue of first impression in the Circuit and there is a substantial ground for difference of opinion.**

The second element under § 1292(b) is that there is a substantial ground for difference of opinion on the issue presented. "'A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution.'" *In re Trump*, 928 F.3d at 371 (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).

It is evident that there is a substantial ground for difference of opinion on whether tax exemption under 26 U.S.C. § 501(c)(3) constitutes receipt of federal financial assistance for purposes of Title IX. This is an issue of first impression in this Circuit and the Supreme Court has not addressed the question. Additionally, there are conflicting decisions between district courts in various circuits. As noted above, there are six cases in which district courts have concluded that § 501(c)(3) tax exempt status does not equal federal financial assistance, and three other cases that have expressed doubt on the issue. Conversely, there are three district court decisions that have reached the opposite conclusion, *see E.H. v. Valley Christian Acad.*, No. 221CV07574MEMFGJSX, 2022 WL 2953681 (C.D. Cal. July 25, 2022); *Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185 (S.D.N.Y. 1988), *aff'd*, 882 F.2d 621 (2d Cir. 1989); *McGlotten*, 338 F. Supp. at 461, and one Court of Appeals case that has noted the argument is not frivolous for purposes of asserting federal question jurisdiction. *See M.H.D. v. Westminster Sch.*, 172 F.3d 797 (11th

Cir. 1999).  In light of this case law, the certified question is a prototypical example of an issue on which there is substantial grounds for difference of opinion warranting interlocutory review.

**C.    An immediate appeal of the District Court's Order would materially advance the ultimate termination of this litigation (and the four other cases against Petitioner).**

The third and final element under § 1292(b) is that prompt appellate resolution could "materially advance the ultimate termination of the litigation."  *In re Trump*, 928 F.3d at 371 (citing *McFarlin*, 381 F.3d at 1259 (stating that "the text of § 1292(b) requires that resolution of a 'controlling question of law . . . may materially advance the ultimate termination of the litigation.' This is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation").

This Court should grant the Petition because resolution of the question certified could materially advance the ultimate termination of this litigation by substantially shortening the litigation by eliminating the complex issues surrounding Title IX and simplifying trial.  If this Court holds that the tax exemption is not federal financial assistance, it would eliminate the need for further proceedings relative to Title IX. The litigation would be narrowed and proceed in a more efficient and streamlined manner, and the parties would avoid trial on Title IX issues and all attendant preparation including motion *in limine* practice, drafting of jury

instructions and *voir dire* on Title IX, and certain witness preparation. At a minimum, knowing the result of the appeal and what damages are recoverable based upon the claims asserted would undoubtably materially advance the termination of the case. *See U.S. Philips Corp. v. Sears Roebuck & Co.*, Miscellaneous Docket No. 361, 1992 U.S. App. LEXIS 37824, at *5 (Fed. Cir. Dec. 10, 1992) ("[R]eviewing these interlocutory appeals will determine with finality which claims will proceed to trial and, thus, may materially advance the ultimate termination of the litigation."); *Associated Mills, Inc. v. Drake Hotel, Inc.*, 334 N.E.2d 746, 748 (Ill. App. 1975) (certifying question for appellate review because "it will determine whether the defendant is exposed to liability in the amount of $ 87,122.80, as contended by plaintiff, or $ 250 or some lesser sum, as contended by defendant").

By the same token, not knowing the result of the appeal will also hamstring the parties and have an impact on any future settlement discussions. Recoverable damages on the Title IX claim differ from the recoverable damages under Maryland state law negligence and tort claims, and the parties need to know the result of the appeal to know the ceiling or range of recoverable damages to limit or frame future settlement discussions. Going into settlement negotiations without knowing the result of the appeal would impair the parties' ability to reach a potential resolution and would protract the litigation because it would require the parties to litigate all five cases through trial and then appeal. Thus, granting the interlocutory appeal,

regardless of the eventual decision, would advance the termination of the litigation. *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (stating that "uncertainty" about whether a claim asserted was viable "may delay settlement . . . and by doing so further protract the litigation. That is enough to satisfy the 'may materially advance' clause of section 1292(b)."); *Scott v. Ruston La. Hosp. Co.*, No. 16-0376, 2017 U.S. Dist. LEXIS 56138, at *15-16 (W.D. La. Apr. 12, 2017) ("The Court also finds that a decision on this issue may help to advance settlement, a factor that courts have found significant in permitting interlocutory appeals to proceed.").

Moreover, this is one of five cases pending against Petition that present the same issue regarding whether Petitioner's tax-exempt status under 26 U.S.C. § 501(c)(3) constitutes federal financial assistance for purposes of Title IX. It would be far more efficient to know the result of the appeal now and whether Title IX applies to Petitioner in the five cases based upon their tax exemption status, as opposed to trying five cases over many weeks and then appealing each of the cases.

Furthermore, it cannot be lost that the resolution of the certified question is of critical importance to private independent schools and non-profit entities who need guidance on whether Title IX and other Spending Clause legislation apply based solely upon tax exempt status. Currently, there is disputed case law on this issue, and legal practitioners could exploit that dispute and file lawsuits against private

independent schools and other non-profit entities with education programs for failing to comply with Title IX when such entities never believed they were required to comply with the statute because they made a conscious decision not to accept federal funding. While history would only tell whether a spike in Title IX lawsuits will follow the District Court's Order (and the recent decision in *Valley Christian Academy*), because the District Court's Order represents new law on an issue of first impression in this Circuit, this Court should grant the Petition and allow an immediate interlocutory appeal.

## **<u>CONCLUSION</u>**

Petitioner respectfully requests that the Court grant this Petition for Leave to Appeal Pursuant to 28 U.S.C. § 1292(B).


Dated: September 14, 2022                    Respectfully submitted,


*/s/Gregg E. Viola*                          */s/Mark P. Johnson*
Gregg E. Viola (25737)                       Mark P. Johnson (29091)
ECCLESTON & WOLF, P.C.                        ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center              Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor                7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378s                      Hanover, MD 21076-1378
(410) 752-7474 (phone)                       (410) 752-7474
(410) 752-0611 (fax)                         (410) 752-0611 (fax)
E-mail: viola@ewmd.com                       E-mail: johnson@ewmd.com
*Attorney for Petitioner*                    *Attorney for Petitioner*

## CERTIFICATE OF COMPLIANCE

This document was printed in 14 point Times New Roman. This document complies with Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,938 words.

/s/Mark P. Johnson
Mark P. Johnson (29091)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of September, 2022, copies of the foregoing were served by e-mail, to:

Christina Graziano, Esq.
Justin Browne, Esq.
Brian Ketterer, Esq.
Ketterer, Browne & Associates, LLC
336 S. Main Street
Bel Air, Maryland 21014
Christina@KBAattorneys.com
Justin@KBAattorneys.com
Brian@KBAattorneys.com
*Attorneys for Respondents*

Brian S. Goodman, Esq.
Goodman & Donohue LLC
9199 Reisterstown Road, Suite 213 C
Owings Mills, MD 21117
brian@goodmandonohue.com
*Attorneys for Lutheran Church-Missouri Synod, Southeastern District*

/s/Mark P. Johnson
Mark P. Johnson (29091)